UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP. A subsidiary of Stryker Corporation, STRYKER CORPORATION A New Jersey corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:17-cv-00938-SEB-TAB ) |
| DJO GLOBAL, INC. A California corporation, JAKE EISTERHOLD An individual, ERIC HUEBNER An individual, JUSTIN DAVIS An individual, | ) ) ) ) ) |
| Defendants. | ) |

**DISCOVERY ORDER**

**I.    Introduction**

The Court held a telephonic status conference on May 3, 2018, to address discovery disputes. Following this conference, two issues remained unresolved: 1) whether the Individual Defendants must produce unredacted copies of redacted text messages and 2) the temporal scope of Defendants' production.[1] The Magistrate Judge took these issues under advisement and ordered the parties to submit a sampling of unredacted messages. A review of these messages reveals the Court needs to confer further with the parties. The Court sets the matter for a telephonic conference at 10:30 a.m. on June 7, 2018, to address these issues. With respect to the

---

[1] During the conference, Plaintiff Howmedica Osteonics Corp. and Defendant DJO Global, Inc. also disagreed on the scope of the document production related to HOC's "flip-flopping" theory and DJO's "properly aligned sales" theory. Following a meet-and-confer, HOC and DJO informed the Court that they reached an understanding, so the Court does not address the issue at this time.

temporal scope, the Court finds Defendants must extend their productions through February 11, 2018.

## II. Background

HOC filed suit alleging breach of contract, tortious interference, unfair competition, and corporate raiding, as well as claims under the Indiana Uniform Trade Secrets Act and the Defend Trade Secrets Act. The Individual Defendants, Jake Eisterhold, Eric Huebner, and Justin Davis, are former HOC employees who now work for Defendant DJO Global, Inc. HOC alleges DJO wrongly recruited the Individual Defendants from HOC. HOC also alleges the Individual Defendants breached their non-compete agreements by joining DJO, using knowledge they acquired while working for HOC, and targeting customers they serviced as HOC employees. HOC asserts that since the Individual Defendants left and joined DJO, HOC's sales and profits are down significantly. DJO and the Individual Defendants deny HOC's claims.

## III. Discussion

### a. Redactions

HOC requested text messages between the Individual Defendants and sales clients. The Individual Defendants produced the text messages, but redacted many of them. HOC wants the unredacted versions. The Individual Defendants characterized the redacted texts as belonging to six categories. However, following the telephonic status conference, the Individual Defendants agreed to provide unredacted texts for all but one category, which the Individual Defendants dub "locker room banter."[2]

---

[2] The parties have in place a confidentiality agreement that limits the disclosure of discovery information. The Individual Defendants and HOC agree that the confidentiality agreement would sufficiently protect the information in the other five categories, but argue that the agreement would not apply to "locker room banter." The Court takes no position on whether

2

The only case the parties cited is *Flagg ex rel. Bond v. City of Detroit*, 05-74253, 2009 WL 3388477 (E.D. Mich. Oct. 19, 2009), *objections overruled sub nom. Flagg v. City of Detroit*, 05-74253, 2009 WL 3837299 (E.D. Mich. Nov. 16, 2009). That case dealt with the production of 626,638 individual text messages sent by City of Detroit employees on city-owned devices over a two-year period. *Id.* at *1. The magistrate judge conducted the painful task of an *in camera* review of all 626,638 texts. *Id.* Of the 626,638 texts, the magistrate judge determined that only 36 were relevant or reasonably calculated to lead to the discovery of admissible evidence. *Id.* at *2. The judge put the other texts into categories to demonstrate that they were not relevant and not discoverable:

> As might be expected, many of these texts were sent between City of Detroit employees and officials regarding legitimate municipal business. A number originate from the City's Law Department, and discuss pending cases unrelated to this case. There are also texts between City of Detroit officials, including then-Mayor Kilpatrick and mayoral appointees, involving purely political discussions having no bearing on this case.
>
> A significant number of the texts center around the romantic adventures and misadventures of City employees and others. None of these has any relevance to the issues in this case.
>
> Many of the texts also involve what might be called "idle chatter," involving discussions of sporting events, vacations, lunch plans, humor, workplace complaints, and general chit-chat unrelated to this case.

*Id.* at *2–3.

The Individual Defendants argue that the "locker room banter" texts are comparable to idle chatter, but deserve even greater scrutiny prior to production due to their embarrassing nature. The Individual Defendants assert that the texts are irrelevant, would not lead to discoverable evidence, and would only serve to embarrass or prejudice the Individual

---

"locker room banter" is covered by the agreement, but notes the parties' agreement to keep texts in the other five categories confidential.

Defendants. HOC responds that the Individual Defendants do not get to unilaterally decide what is and is not relevant under the discovery standards, and party communications are crucial to its claims.

During the May 3 telephonic conference, the Magistrate Judge indicated his intention to order the unredacted messages produced given the importance of the content of communications among the Individual Defendants and sales clients. The Individual Defendants requested the Magistrate Judge review a sample of representative "locker room banter" texts *in camera*, so that the Magistrate Judge can make a more fully informed decision, as occurred in *Flagg*. The Magistrate Judge permitted the Individual Defendants to select 10 representative texts and HOC to select 10.[3]

Upon review of the submitted texts, the Court agrees that many of the texts are embarrassing, sophomoric japes between coworkers, and as such have no relevance to this case. On the other hand, two of the 10 texts the Individual Defendants selected are arguably relevant, at least for discovery purposes. The very first text reads: "Let's do this boys!!! Congratulations on keeping it clean for a year now let's go [expletive] them all!!!" Exhibit 1, p. 2. Defendant Huebner sent the text to the other Individual Defendants as well as six other individuals on February 12, 2017, which coincides with the date the non-compete agreement was set to expire—February 11, 2017. *Id.* As discussed below, HOC argues the alleged breaches tolled the expiration of the agreement. This sexually tinged text implies the Individual Defendants may have aggressively gone against the terms of the agreement the day after they thought the

---

[3] HOC was not permitted to view the unredacted texts, but rather to select redacted texts for which the Individual Defendants were to submit unredacted versions for the Court's review. The Individual Defendants' submission is attached as Exhibit 1, and HOC's selections are attached as Exhibits 2 through 11. These exhibits are sealed to all but the Court.

agreement expired. *See id.* This could be relevant to HOC's claims if it can show the agreement was still in effect on February 12, 2017.

In another redacted text, the sender indicates that he or she over-shared information about named colleagues while at a restaurant with Defendant Eisterhold. Exhibit 1, p. 3. The sender requests Eisterhold keep the conversation confidential in part because "I just want want [sic] any harsh feelings too soon, but I miss my "[S]tryker boys!" *Id.* The text also specifies that the oversharing was not limited to the colleagues' romantic pursuits. *Id.* Like with the above discussed text, the timing increases the potential relevance of this text—it was sent just before midnight on February 2, 2017. *Id.* The apparent the desire to avoid harsh feelings due to oversharing on the eve of the expiration of the non-compete agreement might be discoverable.

To be sure, the texts in question are replete with what some people might call locker room banter. However, just because a text contains such banter does not make the entire text irrelevant. These two texts raise the possibility that the Individual Defendants may have redacted relevant texts simply because they include inappropriate remarks.

HOC's selections also give the Court pause. Unlike the Individual Defendants' submissions, which indicated which texts within the string had been redacted, the texts HOC selected were not marked. And rather than one document, the Individual Defendants submitted 10 PDFs, apparently containing HOC's 10 selections. The Court's concern comes from the documents' irregularity. They varied in length from one to 40 pages, containing roughly eight texts per page, and there is no apparent reason for the wide range in the size. In a 27-page document, Exhibit 6, the Court found only two texts it that matched the offensive nature of what the Individual Defendant's call locker room banter, so the Court sees no need for the document to have been 27 pages long. For two of the documents, Exhibits 2 and 3, the Court cannot tell

5

which texts had been redacted because none appeared to be the kind of inappropriate language they call locker room banter. Naturally, the Court wonders which texts in those documents had been redacted and on what basis. Though the Court has no reason to suspect nefarious behavior, these irregularities warrant further discussion.

With these questions unresolved, the Court cannot rule on HOC's request for the Court to order the Individual Defendants to produce all the texts unredacted. Instead, HOC and the Individual Defendants shall appear by counsel for a telephonic status conference at 10:30 a.m. on June 7, 2018. Counsel should be prepared to discuss the redacted texts detailed above, including whether these texts are discoverable and whether their content supports HOC's contention that all the redacted texts should be produced in unredacted form. Counsel also shall be prepared to address the noted irregularities with HOC's selections. Within seven days following this order, the Individual Defendants must provide HOC with unredacted versions of the two texts discussed above.

### b. Temporal Scope

The parties also dispute the temporal scope of production. HOC seeks text messages, sales data, pricing data, commission reports, customer lists, sales agreements, territory information, and compensation information to calculate its alleged damages. Both DJO and the Individual Defendants argue that the outer temporal parameter for their document production should be February 11, 2017, and have not produced information after that date. They argue that the alleged non-compete restrictions terminated on February 11, 2017, and information after that date is irrelevant. HOC argues that, under its theory of the case, the non-compete restrictions contained a tolling provision that tolled the expiration of the restrictions, so they are still in effect

due to the alleged breaches.  However, HOC only asks DJO and the Individual Defendants to produce documents up to February 11, 2018.

The rule governing the scope of discovery is outlined is Federal Rule of Procedure 26(b)(1), which states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Further, the Court has broad discretion over discovery.  *See Regency Com. Assocs. LLC v. Action 49 Junction I, LLC*, 3:17-cv-00143-WTL-MPB, 2017 WL 5287168, at *3 (S.D. Ind. Nov. 13, 2017).

One year of additional information is proportional to the needs of the case and consistent with the scope of other discovery in this case.  Though DJO argues it has already produced many pages of documents, the total is still fewer than 9,000, which is far from excessive given the magnitude of the underlying dispute.  Further, the parties have already agreed to search terms and parameters for the production.  Adding one year to the process is not a disproportionate burden for DJO and the Individual defendants.

DJO asks the Court to limit the information it must provide.  It argues that information between February 11, 2017, and February 11, 2018, should be limited to information related to sales transactions that began before February 11, 2017, but were not finished until after that date. However, this interpretation would essentially deny HOC's tolling theory.  If the sales were instigated before the 2017 deadline, they were arguably covered by the non-compete even

without tolling. Conversely, if HOC's tolling theory is correct, then the non-compete restrictions remained in effect after February 11, 2017. Thus, under HOC's theory, sales that were instigated after February 11, 2017, may have further violated the non-compete agreement, which would be highly relevant to its damages claims.

Therefore, within 21 days of this order, DJO and the Individual Defendants must provide the text messages, sales data, pricing data, commission reports, customer lists, sales agreements, territory information, and compensation information through February 11, 2018.

**IV. Conclusion**

Parties shall appear by counsel for a telephonic conference at 10:30 a.m. on June 7, 2018, to discuss the redacted text messages. Counsel shall call the Court at 317-229-3660. Regarding the temporal scope of production, HOC's suggested cutoff date of February 11, 2018, is appropriate and proportional, and DJO and the Individual Defendants must update their productions within 21 days.

Date: 5/24/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.